1. TRANSFER TAX—EXEMPTIONS.
    Transfer Tax Law 1896, art. 10, provided for a transfer tax on devises to persons or corporations not exempt by law from taxation on real and personal property. Section 4 of the tax law provided that real property and certain personal property of a corporation organized exclusively for

moral or mental improvement shall be exempt from taxation. Laws 1900, c. 382, § 2, amended article 10 of the Laws of 1896, providing that the exemptions enumerated in section 4 of the tax law should not be construed as applicable in any manner to the provision of article 10. *Held* to deprive corporations exempt by Tax Law, § 4, subd. 7, from taxation on their real and personal property, of exemption from the transfer tax theretofore given.

2. SAME—DEVISE TO UNIVERSITY.

Under Laws 1896, c. 908, as amended by Laws 1900, c. 382, a corporation organized exclusively for educational purposes is no longer exempt from the transfer tax.

In the matter of the estate of Jacob Crouse, deceased. Appeal by the Syracuse University from an assessment of a transfer tax on a legacy. Appeal dismissed.

James B. Brooks, for Syracuse University.

John McLennan, for state comptroller.

GLASS, S. This is an appeal by the Syracuse University from an assessment of a transfer tax upon its legacy of $10,000 under the will of Jacob Crouse, deceased. The university contends that its legacy is exempt from the tax because it is a corporation whose real and personal property is exempt from general taxation, and therefore does not come within the class of corporations upon whose legacies the transfer tax law, now known as "Article 10 of the Tax Law," imposes a tax. It is conceded that the legacy in question would be exempt for the reason stated, except for the enactment of chapter 382 of the Laws of 1900; and the question on this appeal is whether or not said act of 1900 had the effect to repeal the exemption from the transfer tax which theretofore existed in favor of charitable, benevolent, and educational institutions organized under the laws of this state, so far as concerns institutions whose exemption from general taxation depends upon the provisions of section 4 of the tax law. The tax laws of this state, by chapter 908 of the Laws of 1896, were consolidated into one law, known as the "Tax Law," constituting chapter 24 of the General Laws of the state, divided into 12 articles, with sections numbered consecutively throughout the act. The tenth article, composed of sections 220–242, inclusive, was a revision of all the statutes relating to the tax upon transfers. The first section of article 10, numbered 220, provides as follows:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over * * * to persons or corporations not exempt by law from taxation on real or personal property," in certain cases, including transfers by will and by intestate laws.

Section 4 of the tax law provides as follows:

"Sec. 4. Exemptions from Taxation. The following property shall be exempt from taxation: (1) * * * (2) * * * (3) Property of a municipal corporation of the state held for public use, except the portion of such property not within the corporation. (4) * * * (5) * * * (6) * * * (7) The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, Bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, scientific, literary, library, patriotic, historical or cemetery purposes, or for the enforce-

ment of laws relating to children or animals, or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of any such corporation or association shall be exempt from taxation."

Ten other subdivisions follow, descriptive of property exempt from taxation, not necessary to be detailed here.

It is plain, therefore, that the legacy to the university would be exempt from the transfer tax if only sections 220 and 4 of the tax law were to be considered, because the university, being an educational institution, is exempt from taxation on its real and personal property, and the transfer tax is not imposed upon any corporation whose real or personal property is exempt from general taxation. The legislature of 1900, however, by section 2 of chapter 382 of its laws, enacted as follows:

"Sec. 2. Article ten of such chapter [Laws, 1896, c. 908] is hereby amended by adding a section to be section two hundred and forty-three, to read as follows: 'Sec. 243. Exemptions in Article One not Applicable. The exemptions enumerated in section four of the tax law, of which this article is a part, shall not be construed as being applicable in any manner to the provisions of article ten hereof.' "

What was the purpose of the legislature in passing this amendment? If effect is to be given to the language employed, if only ordinary meanings are to be attributed to the words used by the lawmaking power, it seems impossible to believe that the legislature intended anything else than to obliterate whatever application the exemption provisions of section 4 then had to the provisions of the transfer tax law. It is true that in one sense the exemptions enumerated in section 4 had no application, and never were intended to have application, to the provisions of the transfer tax law; for the tax from which there is exemption under section 4 is a tax upon property itself, while the tax imposed by the transfer tax law is a tax upon the transfer of property. But was it in this sense that the legislature used the term "applicable" in the amendment in question, as contended by the learned counsel for the university? Was this law passed merely to declare as law that which was already plain upon the face of the statutes? Is it not more reasonable, more natural, to conclude that the purpose of the legislature was to make some change in the law as it then stood; to accomplish something in the way of broadening the field for the operation of the transfer tax law; to bring in new subjects and new objects of taxation? The present laws relating to taxable transfers are a compilation and revision of 15 years of legislation upon the subject, beginning with the collateral inheritance tax act of 1885. Its development has been, to a great extent, in the form of amendments seeking to enlarge the field of taxation, and to break down the barriers which separated the exempt from the nonexempt. Judicial decisions tending to limit the scope of the law have been closely followed by new legislation abolishing the exemptions declared by the courts to exist. The constant effort seems to have been to bring more persons and more property within the operation of the law. It is a significant circumstance to be taken into consideration in arriving at the intention of the legislature in

passing the amendment of 1900 that shortly prior thereto the court of appeals had held, in Re Thrall's Estate, 157 N. Y. 46, 51 N. E. 411, argued in the October term, 1898, that a legacy to a corporation whose property was exempt from general taxation by virtue of the provisions of section 4 of the tax law was exempt from the transfer tax. In that case there was a legacy of $30,000 to the city of Middletown for the construction of a public-library building. The surrogate of Orange county had held the legacy to be exempt from the transfer tax. The court of appeals sustained the ruling of the surrogate upon the ground that section 220 of the tax law imposes a transfer tax only upon persons or corporations not exempt from taxation upon their real or personal property, and section 4 of the tax law exempts from general taxation the property of a municipal corporation in the state held for a public use. That decision reversed the ruling of the appellate division, and established beyond all controversy that the exempting provisions of section 4 did in fact apply to the provisions of article 10, in the sense that they must have been considered, as the law then stood, in determining whether any particular person or corporation came within the class of persons or corporations upon whose legacies a transfer tax was imposed by section 220, viz. the "nonexempt" class. The amendment of 1900 following so closely upon the heels of this decision was, in my judgment, prompted by it, and was intended, not to declare the law as it already existed, but to effect a change in the then law, and no less a change than to thereafter deny exemption from the transfer tax to persons and corporations whose exemptions from general taxation on their real or personal property was dependent upon the provisions of section 4 of the tax law; exception being made, of course, of bishops and religious corporations, expressly exempted from the transfer tax by section 221. My attention has been called to the recent decision of Surrogate Thomas, of New York, in Re Huntington's Estate (Sur.) 70 N. Y. Supp. 429, in which the same question was presented as is presented in this case, and in which he reached the opposite conclusion. The object of the amendment of 1900, as he concludes, was merely to make it clear that the exemptions under section 4 of the tax law, being exemptions of property, and not of transfers of property, have no application to the provisions of article 10, which article relates exclusively to a tax upon transfers of property, and not upon the property itself. He says:

"The transfer tax act imposes a tax on transfers, and creates no new tax on the property itself. The exemptions mentioned in section 4 of the tax law are not on transfers, but on property, and they should not be construed as being applicable in any manner to the provisions of article 10 concerning the transfer tax. The new section created by the amendment so enacts, and so makes plain a subject which invites confusion. This, in my judgment, was its whole intent and purpose, and to this its meaning should be limited."

The learned surrogate's reasoning proceeds upon the theory that no part of the exemptions enumerated in section 4 were in fact ever applicable, or intended by the legislature to be applicable, to the provisions of the transfer tax law, and he argues, in effect, that, there

being no application in fact existing, the amendment was not intended to do away with any application, but was intended for another purpose stated in his opinion. The error of his reasoning, as it appears to me, lies in the assumption that no part of the exemption provisions of section 4 were in fact applicable to the provisions of the transfer tax law; for every one must concede that, if the exempting provisions of section 4 did in fact in any manner apply to the provisions of article 10, the legislature by the amendment in question must have meant to annul such application for the future. Of necessity, all of the provisions of section 4 which pointed out persons or corporations whose real or personal property was exempt from general taxation were, by relation, applicable to the provisions of the transfer tax law, because by section 220 of the transfer tax law that tax was imposed only upon persons or corporations whose real or personal property was not exempt from taxation. The court of appeals had so held in the Thrall Case, above mentioned. Without question, there are some exemptions of property mentioned in section 4 (like the exemption of deposits in savings banks, for instance, mentioned in the fourteenth subdivision of the section) which were not applicable, and were never intended to be applicable, to the provisions of article 10, for the reason stated by the learned surrogate,—that in the one case the tax imposed was upon the property, and in the other case upon the transfer of property. But this cannot be said of all the provisions of the section. Other and more numerous parts designate persons and corporations whose real or personal property is exempt, and thereby necessarily must have been considered in determining whether any particular person or corporation came within the class of persons or corporations designated by section 220 as "not exempt by law from taxation on real or personal property." In that sense the exempting provisions of section 4 were applicable to the provisions of article 10. To my mind, the legislature intended just what it said when it enacted that the exemptions enumerated in section 4 shall not be construed as being applicable in any manner to the provisions of article 10. It included all of the exemptions of section 4, and it was emphatic in declaring that they shall not be construed as being applicable in any manner. They are no longer applicable for any purpose in connection with the transfer tax law. They cannot be considered even for the purpose of ascertaining whether any particular person or corporation whose legacy is sought to be subjected to the transfer tax is or is not exempt from taxation on its real or personal property. As was said by the learned surrogate of Suffolk county in Re Howell, 34 Misc. Rep. 40, 69 N. Y. Supp. 505, regarding the amendment in question:

"It is doubtless true, as argued, that repeals by implication are not favored; that the taxing power is an extraordinary power; that it should not be exercised doubtfully, but only in cases where a clear right to impose tax exists. Nevertheless the act of 1900 cannot be nullified and disregarded. The legislature must have had some purpose in mind when it was placed on the statute book, and, while sections 4 and 220 are not expressly repealed, yet section 243 says, in effect, that, in assessing and fixing the transfer tax, section 4 shall be left out of consideration entirely."

Furthermore, the legislature of 1901 has given practical construction to the amendment in question by passing a law which amends the law relative to taxable transfers by exempting therefrom legacies to Bible and tract societies. It may be that the amendment of 1901 is but the prelude to a repeal in the near future of the whole of the 1900 amendment, and that the state of New York will soon resume its accustomed attitude of liberality towards benevolent, charitable, and educational institutions in respect to all taxation; but, while the statute remains in its present form, it is the duty of this court to enforce it as the legislature plainly intended it should be enforced.

It is not to be denied that the construction adopted by this court of the amendment in question is open to some objections. They are not sufficient, however, in my opinion, to cast doubt upon the correctness of the conclusion reached. The amendment, if so construed, is contrary to the general policy of the state to make taxation equal, and to measure exemptions by a standard common to all, because, if such is the proper construction, exemption from the transfer tax, although taken away from corporations exempt from general taxation under section 4 of the general law, remains to corporations which have been accorded exemption from general taxation by special laws. The force of that objection, however, is dispelled when one recalls the piecemeal manner in which the transfer tax law has been built up. It is still, doubtless, in the process and period of experiment and formation, and certainly can make no claim to being a complete law, or even to being a commendable law in respect to form or diction. The construction adopted is also open to the criticism that it necessitates the conclusion that the legislature was willing to reverse, so far as the transfer tax is concerned, the state's previous attitude of liberality towards worthy institutions engaged in the uplifting of mankind, and in ministering to their needs and comfort. But the transfer tax law never was a liberal statute. Almost every legislature since the collateral inheritance tax law was passed, has left the law relating to taxation on inheritances or upon transfers less liberal than it found it. Whether wisely or not, whether humanely or not, the constant tendency of the legislation of these days, in this state, regarding all kinds of taxation, is to remove exemptions and enlarge the scope of the law. Everything considered, no doubt remains in my mind of the intention of the legislature when it enacted the amendment of 1900 to take away the privilege of exemption now claimed by the appellant. An order may be entered dismissing the appeal, without costs.

Appeal dismissed, without costs.